IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>and the<br>STATE OF INDIANA,<br><br>    Plaintiffs,<br><br>  v.<br><br>EXIDE TECHNOLOGIES<br>(d/b/a EXIDE TECHNOLOGIES, INC.),<br><br><br>    Defendant. | Civil Action No. 15-cv-433 |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Indiana ("Indiana"), by the authority of the Indiana Attorney General, acting at the request of the Indiana Department of Environmental Management ("IDEM"), hereby file this Complaint and allege as follows:

## NATURE OF ACTION

1. This is a civil action brought against Exide Technologies (referred to herein as "Exide" or the "Defendant") pursuant to the Clean Air Act, 42 U.S.C. § 7401 et seq. and the laws of Indiana. This action seeks civil penalties and injunctive relief for violation of certain requirements under the Clean Air Act and its implementing regulations, as well as corresponding requirements of Indiana law, at a secondary lead smelting facility that Exide owns and operates at 2601 West Mount Pleasant Boulevard, Muncie, Indiana (the "Facility"). Indiana's authority to

seek injunctive relief and civil fines with respect to the Facility derives not only from the Clean Air Act, but also Indiana Code ("Ind. Code") §§ 13-13-5-1 and 13-13-5-2.

2. As alleged with greater specificity below, Exide has violated the certain statutory and regulatory requirements applicable to the Facility arising under: (i) the hazardous air pollutant provisions of Clean Air Act Section 112, 42 U.S.C. § 7412, and its implementing regulations, including the National Emission Standards for Hazardous Air Pollutants ("NESHAP") General Provisions, codified at 40 C.F.R. Part 63, Subpart A, and the NESHAP for Secondary Lead Smelting, codified at 40 C.F.R. Part 63, Subpart X; (ii) corresponding Indiana statutes and regulations implementing the Clean Air Act, including Indiana's regulations governing hazardous air pollutant emissions from Secondary Lead Smelters, codified at 326 Indiana Administrative Code ("IAC") 20-13.1; and (iii) the permit provisions of Clean Air Act Title V, its implementing regulations, and Indiana's corresponding Title V operating permit program, including requirements under Exide's Title V operating permit for the Facility.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and Clean Air Act Sections 113(b) and 304(a)(1), 42 U.S.C. §§ 7413(b) and 7604(a)(1). The court has supplemental jurisdiction over the claims under Indiana law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a) and Clean Air Act Section 113(b), 42 U.S.C. § 7413(b). The Defendant is found in and transacts business in the Southern District of Indiana and certain acts or omissions which form the basis for claims asserted in this Complaint occurred within this District.

## NOTICE

5. On September 16, 2013, EPA issued a Notice of Violation and Finding of

Violation identifying alleged Clean Air Act violations at the Facility. EPA's September 16, 2013, violation notice was sent to Exide and to the State of Indiana, and a copy is attached hereto as Exhibit 1 to this Complaint.

6. On April 17, 2014, EPA issued a Finding of Violation identifying alleged Clean Air Act violations at the Facility. EPA's April 17, 2014, violation notice was sent to Exide and to the State of Indiana, and a copy is attached hereto as Exhibit 2 to this Complaint.

7. As a Co-Plaintiff in this action, the State of Indiana has received notice of the commencement of this action in accordance with the requirements of Clean Air Act Section 113(b), 42 U.S.C. § 7413(b).

## THE DEFENDANT

8. Defendant Exide Technologies is a company that is incorporated in Delaware. Exide does business in Indiana and currently owns and operates the Facility in Muncie, Indiana, that is the subject of this action.

9. The Defendant is a "person" as defined in Clean Air Act Section 302(e), 42 U.S.C. § 7602(e).

## GENERAL ALLEGATIONS

10. The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population. *See* 42 U.S.C. § 7401(b)(1).

### National Emission Standards for Hazardous Air Pollutants

11. Clean Air Act Section 112(c), 42 U.S.C. § 7412(c), requires EPA to promulgate a list of all categories and subcategories of new and existing "major sources" of hazardous air pollutants and establish emissions standards for the categories and subcategories. These emission standards are known as National Emission Standards for Hazardous Air Pollutants or

"NESHAP." EPA codified these standards at 40 C.F.R. Parts 61 and 63.

12. "Hazardous air pollutant" is defined as "any air pollutant listed in or pursuant to" Clean Air Act Section 112(b), and includes, among other pollutants, lead compounds, various hydrocarbons, and dioxin and furan congeners. 42 U.S.C. § 7412(a)(6), (b)(1). *See also* 326 IAC 1-2-33.5.

13. Clean Air Act Section 112(i)(3), 42 U.S.C. § 7412(i)(3), prohibits any person subject to a NESHAP from operating a source in violation of a NESHAP after its effective date. *See also* 40 C.F.R. §§ 61.05 and 63.4.

### The Secondary Lead NESHAP, the NESHAP General Provisions, and the Corresponding Indiana Regulations

14. Pursuant to Clean Air Act Section 112, EPA has promulgated the National Emission Standards for Hazardous Air Pollutants from Secondary Lead Smelting (the "Secondary Lead NESHAP"), which has been amended periodically and codified at 40 C.F.R. Part 63, Subpart X. *See* 60 Fed. Reg. 32587 (June 23, 1995); 62 Fed. Reg. 32216 (June 17, 1997); 64 Fed. Reg. 4572 (January 29, 1999); 64 Fed. Reg. 69643 (December 14, 1999); 70 Fed. Reg. 75320 (December 19, 2005); 77 Fed. Reg. 555 (January 5, 2012); 79 Fed. Reg. 367 (January 3, 2014).

15. This Complaint alleges violations of the version of the Secondary Lead NESHAP that was promulgated on January 5, 2012, and amended on January 3, 2014, as well as corresponding requirements imposed by Indiana regulations codified at 326 IAC 20-13.1. Those requirements of the Secondary Lead NESHAP and 326 IAC 20-13.1 are referred to herein collectively as the "2012 NESHAP Requirements." Under 326 IAC 20-13.1-3(c), Exide was required to achieve early compliance with certain 2012 NESHAP Requirements by October 1, 2013. Under 40 C.F.R. § 63.546, Exide was required to comply with all applicable 2012

4

NESHAP Requirements by January 4, 2014. Exide's Title V permit incorporated the 2012 NESHAP Requirements in a set of modifications that took effect on February 4, 2014, and September 9, 2014. Finally, as specified by a direct final rule published at 79 Fed. Reg. 367 (Jan. 3, 2014), Exide was required to comply with certain amended 2012 NESHAP Requirements by March 4, 2014.

<u>Applicability and General Provisions</u>

16. Under 40 C.F.R. § 63.541(a) and 326 IAC 20-13.1-1(a), the 2012 NESHAP Requirements apply to the following affected sources at a secondary lead smelter: blast, reverberatory, rotary, and electric furnaces; refining kettles and agglomerating furnaces; dryers; process fugitive emissions sources; buildings containing lead bearing materials; and fugitive dust sources.

17. The NESHAP General Provisions – codified at 40 C.F.R. Part 63, Subpart A and incorporated into Indiana laws at 326 IAC 20-13.1-1(d) – impose performance testing requirements, monitoring requirements, recordkeeping and reporting requirements, and other requirements applicable to owners and operators of affected sources, including owners and operators of facilities covered by the Secondary Lead NESHAP.

<u>Total Enclosure and Lead Emission Control Requirements</u>

18. Under 40 C.F.R. § 63.544 and 326 IAC 20-13.1-6, the owner and operator of a secondary lead smelter must operate specified process fugitive emissions sources and fugitive dust sources in a total enclosure that meets certain requirements and is maintained at negative pressure at all times and vented to a control device designed to capture lead particulate. Among other things, the owner and operator must: (i) ventilate the total enclosure continuously to ensure negative pressure values of at least 0.013 millimeters of mercury (0.007 inches of water); and (ii) maintain an inward flow of air through all natural draft openings.

19. Under 40 C.F.R. § 63.548(k) and 326 IAC 20-13.1-7, the owner and operator of a secondary lead smelter must install, operate, and maintain a digital differential pressure monitoring system to continuously monitor each total enclosure in accordance with specified requirements. Among other things, the owner and operator must install and maintain a minimum of one building digital differential pressure monitoring system at each of at least three specified wall locations in each total enclosure that has a total ground surface area of 10,000 square feet or more.

Total Hydrocarbon and Dioxin and Furan Emission Control Requirements

20. 40 C.F.R. § 63.543(c) and 326 IAC 20-13.1-5(d) require the owner and operator of a secondary lead smelting facility to meet specified emission limits for total hydrocarbons ("THC") and dioxins and furans ("D/F") from furnace sources.

21. The Secondary Lead NESHAP recognizes that the generation and destruction of THC and D/F in furnaces and furnace exhaust streams is temperature-dependent. Thus, 40 C.F.R. § 63.548(j)(l) and 326 IAC 20-13.1-10(e)(1) require the owner and operator of a secondary lead smelting facility to install, calibrate, maintain, and continuously operate a device to monitor and record the temperature of the afterburner or furnace exhaust streams consistent with the requirements for continuous monitoring systems in the NESHAP General Provisions.

22. 40 C.F.R. § 63.548(j)(2) and 326 IAC 20-13.1-10(e)(2) require the owner and operator of a secondary lead smelting facility to conduct a performance evaluation for the temperature monitoring device in accordance with the NESHAP General Provisions prior to, or in conjunction with, the initial performance test to determine compliance with the THC and D/F emission limits.

23. 40 C.F.R. § 63.548(j)(3) and 326 IAC 20-13.1-10(e)(3) require the owner and operator of a secondary lead smelting facility to monitor and record the temperature of the

afterburner or the furnace exhaust streams every 15 minutes during the initial performance test for THC and D/F and determine an arithmetic average for the recorded temperature measurements.

24.     40 C.F.R. § 63.548(j)(4) and 326 IAC 20-13.1-10(e)(4) require the owner and operator of a secondary lead smelting facility to demonstrate continuous compliance with the standards for THC and D/F by maintaining a three-hour average minimum exhaust temperature that does not fall more than 28 degrees Celsius (50 degrees Fahrenheit) below the average temperature established in the initial performance test for THC and D/F.

25.     40 C.F.R. § 63.543(c) and 326 IAC 20-13.1-5(d) impose different THC and D/F emission limits for exhaust from collocated blast and reverberatory furnaces:  (i) when the reverberatory furnace is operating; and (ii) when the reverberatory furnace is not operating.  The applicable regulations also impose corresponding recordkeeping requirements, including a requirement to maintain records of any period of startup and shutdown of a furnace and records of all required measurements needed to demonstrate compliance with a relevant standard.  *See* 40 C.F.R. § § 63.550(a), 63.550(c)(13) and Table 1; 40 C.F.R. § 63.10(b)(vii); 326 IAC 20-13.1-14.

26.     40 C.F.R. § 63.543(l) and 326 IAC 20-13.1-5(i) require the owner and operator of a secondary lead smelting facility to develop and follow standard operating procedures designed to minimize emissions of THC for each startup or shutdown scenario anticipated.

### Title V Permit Requirements

27.     Clean Air Act Title V, 42 U.S.C. §§ 7661-7661F, established an operating permit program for major sources of air pollution.  Clean Air Act Section 502(d)(1), 42 U.S.C. § 7661a(d)(1), requires each state to develop and submit to EPA an operating permit program which meets the requirements of Title V.  Pursuant to Appendix A of 40 C.F.R. Part 70, on December 4, 2001, EPA granted Indiana final approval of its Clean Air Act Title V Permit

Program effective November 30, 2001.  66 Fed. Reg. 62969.

28. Indiana's Title V operating permit program regulations are codified at 326 IAC 2-7, and are federally enforceable pursuant to Clean Air Act Section 113(a)(3), 42 U.S.C. § 7413(a)(3).

29. 40 C.F.R. § 70.2 defines "major source" as, among other things, any stationary source that directly emits, or has the potential to emit:  (i) 10 tons per year or more of any hazardous air pollutant listed pursuant to Clean Air Act Section 112(b); (ii) 25 tons or more of any combination of hazardous air pollutants; and/or (iii) 100 tons per year or more of any other air pollutant subject to regulation under the Clean Air Act.  Exide's Facility is a major source.

30. The federal regulations and the Indiana regulations implementing the Title V permit program require an applicant to submit a complete application that is sufficient to evaluate the subject source and to determine all applicable requirements.  Among other things, the permit application must describe all emissions of regulated air pollutants emitted from any emissions unit, identify and describe all points of emissions, and identify and describe all air pollution control equipment and compliance monitoring devices or activities.  An application may not omit information needed to determine the applicability of, or to impose, any applicable requirement.  The application must be certified by a responsible official as true, accurate, and complete.  *See* 40 C.F.R. §§ 70.5(a), 70.5(c), and 70.5(d), and 326 IAC 2-7-4.

31. 326 IAC 2-7-3 provides that a source may not operate after the time it is required to submit a timely and complete Title V permit application except in compliance with a Title V permit.

32. 40 C.F.R. § 70.6(b)(1) provides that Title V permits are federally enforceable and that all terms and conditions in a Title V permit are enforceable by the EPA.

### Exide's Title V Permit

33. IDEM issued Exide a Part 70 Operating Permit Renewal, No. 035-31230-00028, for the Facility on August 1, 2012.  Section E.2 of the permit incorporated and required compliance with pertinent provisions of the NESHAP General Provisions and the Secondary Lead NESHAP.

34. IDEM issued Exide a modified Part 70 Operating Permit, No. 035-33188-00028, for the Facility on February 4, 2014.  Section E.2 of the permit incorporated and required compliance with pertinent provisions of the NESHAP General Provisions and the Secondary Lead NESHAP.  In addition, Section F.1 of the permit incorporated and required compliance with pertinent provisions of 326 IAC 20-13.1 governing hazardous air pollutant emissions from Secondary Lead Smelters.

35. IDEM issued Exide a modified Part 70 Operating Permit, No. 035-34525-00028, for the Facility on September 9, 2014.  Section E.2 of the permit incorporated and required compliance with pertinent provisions of the NESHAP General Provisions and the Secondary Lead NESHAP.  In addition, Section F.1 of the permit incorporated and required compliance with pertinent provisions of 326 IAC 20-13.1 governing hazardous air pollutant emissions from Secondary Lead Smelters.

36. The above-referenced versions of Exide's Title V permit are referred to in this Complaint collectively as the "Title V Permit," with the recognition that particular versions of the permit were in force and effect at different times relevant to certain Claims set forth in this Complaint.

### Clean Air Act Enforcement Provisions Relevant to the United States

37. Clean Air Act Section 113(a)(3), 42 U.S.C. § 7413(a)(3), authorizes federal enforcement of any requirement or prohibition of any rule or permit promulgated or issued under

pertinent provisions of the statute, including requirements and prohibitions under NESHAP regulations, Title V permitting regulations, and Title V permits.  Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), authorizes the United States to pursue enforcement of such requirements through civil actions in district court for injunctive relief and civil penalties.

38. As provided by Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), the Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and EPA regulations codified at 40 C.F.R. Part 19, any person who violates pertinent requirements of the Clean Air Act shall be liable for a civil penalty of up to $37,500 per day per for each such violation occurring after January 19, 2009.

### Enforcement Provisions Relevant to Indiana

39. Clean Air Act Section 304(a)(1), 42 U.S.C. § 7604(a)(1), authorizes Indiana to commence a civil action against any person who is alleged to have violated an emission standard or limitation under the Clean Air Act.

40. Pursuant to Ind. Code §§ 13-13-5-1 and 13-13-5-2, Indiana may seek injunctive relief and civil penalties for the violations alleged herein.  Pursuant to Ind. Code §§ 13-30-4-1, Indiana may recover a civil penalty not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

### FIRST CLAIM FOR RELIEF

**(Failure to Operate Bin Room Baghouse No. 2 as Required by the Title V Permit)**

41. Paragraphs 1-40 are realleged and incorporated by reference as if fully set forth herein.

42. A 2012 ventilation study commissioned by Exide concluded that the Facility's Main Building required additional ventilation to ensure compliance with the Secondary Lead

NESHAP.

43. In May 2013, Exide submitted a Title V Permit modification application to IDEM that outlined Exide's plan to increase the ventilation of the Facility's Main Building in order to ensure that it would be maintained under sufficient negative pressure at all times as mandated by the Secondary Lead NESHAP, including by installing a second bin room baghouse known as Bin Room Baghouse No. 2.  Exide's permit modification application indicated that Exide planned to complete the installation of Bin Room Baghouse No. 2 by July 1, 2013.

44. IDEM's Technical Support Document for the proposed permit modification sought by Exide confirmed that Bin Room Baghouse No. 2 would be exempt from any requirement to obtain prior approval to construct it, but that approval to operate it would be granted by the proposed permit modification.

45. IDEM issued the Title V Permit modification sought by Exide and it took effect immediately upon its issuance on February 4, 2014 (the "February 2014 Title V Permit").

46. Exide had not completed the installation of Bin Room Baghouse No. 2 when the February 2014 Title V Permit took effect.

47. Conditions D.3.1 and D.3.2 of the February 2014 Title V Permit imposed specific limits on the emission of particulate matter and lead from ventilation systems and control devices servicing certain process fugitive emissions sources and fugitive dusts sources in the Facility's Main Building.  In addition, in order to ensure compliance with those emission limit Conditions, Condition D.3.4 of the February 2014 Title V Permit required Exide to operate both Bin Room Baghouse No. 1 and Bin Room Baghouse No. 2 whenever slag crushing was in operation.

48. Although the February 2014 Title V Permit and its requirement to operate two bin room baghouses took effect on February 4, 2014, and although slag crushing was in operation at times after that, the Plaintiffs are informed and believe that Exide did not install and begin

operating Bin Room Baghouse No. 2 until at least June 2014.

49. By failing to operate Bin Room Baghouse No. 2 whenever slag crushing was in operation after February 4, 2014, Exide violated Condition D.3.4 of its February 2014 Title V Permit.

50. Exide's violations of the Clean Air Act and Indiana law, as set forth in this Claim, make Exide subject to injunctive relief and civil penalties of up to: (i) $37,500 per day per violation under the Clean Air Act and (ii) $25,000 per day per violation under Indiana law.

## SECOND CLAIM FOR RELIEF

**(Failure to Maintain Negative Pressure inside the Main Building Total Enclosure)**

51. Paragraphs 1-50 are realleged and incorporated by reference as if fully set forth herein.

52. The Main Building at the Facility contains smelting furnaces, a dryer, material handling areas, and other process fugitive emissions sources and fugitive dusts sources that must be operated in a total enclosure that is maintained at negative pressure at all times and vented to a control device designed to capture lead particulate under the 2012 NESHAP Requirements.

53. On various occasions – including on multiple occasions before Exide increased ventilation by installing Bin Room Baghouse No. 2 – Exide failed to maintain the Main Building total enclosure at negative pressure and failed to ventilate the total enclosure continuously to ensure negative pressure values of at least 0.013 millimeters of mercury (0.007 inches of water), as mandated by the 2012 NESHAP Requirements.

54. By failing to maintain the Main Building total enclosure at negative pressure and failing to ventilate the total enclosure continuously to ensure negative pressure values of at least 0.013 millimeters of mercury (0.007 inches of water), Exide violated 40 C.F.R. § 63.544, 326 IAC 20-13.1-6, and its Title V Permit.

55. Exide's violations of the Clean Air Act and Indiana law, as set forth in this Claim, make Exide subject to injunctive relief and civil penalties of up to: (i) $37,500 per day per violation under the Clean Air Act and (ii) $25,000 per day per violation under Indiana law.

### THIRD CLAIM FOR RELIEF

**(Failure to Operate and Maintain an Adequate Differential Pressure Monitoring System)**

56. Paragraphs 1-55 are realleged and incorporated by reference as if fully set forth herein.

57. Because Exide must maintain the Facility's Main Building total enclosure at negative pressure, Exide also must operate and maintain a digital differential pressure monitoring system to continuously monitor the total enclosure in accordance with the 2012 NESHAP Requirements. The Facility's Main Building total enclosure has a ground surface area of more than 10,000 square feet, so Exide must operate and maintain a minimum of one building digital differential pressure monitoring system at each of at least three specified wall locations.

58. In Quarterly Deviation and Compliance Monitoring Reports submitted to IDEM under its Title V Permit, Exide self-reported its inability to accurately measure the Main Building total enclosure's differential pressure on multiple occasions after the 2012 NESHAP Requirements applied to the Facility. Exide's deviation reports attributed the failure to dirt and water accumulation in the differential pressure monitoring system sensors that needed to be remedied by intensified cleaning and preventative maintenance.

59. By failing to operate and maintain an adequate differential pressure monitoring system for the Main Building total enclosure, Exide violated 40 C.F.R. § 63.548(k), 326 IAC 20-13.1-7, and its Title V Permit.

60. Exide's violations of the Clean Air Act and Indiana law, as set forth in this Claim, make Exide subject to injunctive relief and civil penalties of up to: (i) $37,500 per day per

violation under the Clean Air Act and (ii) $25,000 per day per violation under Indiana law.

## FOURTH CLAIM FOR RELIEF

### (Failure to Maintain Minimum Furnace Exhaust Temperature)

61.     Paragraphs 1-60 are realleged and incorporated by reference as if fully set forth herein.

62.     The United States is informed and believes that, in June 2014, Exide conducted a performance evaluation for its temperature monitoring device and an initial performance test to establish three-hour average minimum furnace exhaust temperatures that Exide would need to maintain to demonstrate continuous compliance with the emission standards for THC and D/F.

63.     After its average furnace exhaust temperature limits were established under the 2012 NESHAP Requirements – including 40 C.F.R. § 63.548(j)(3) and 326 IAC 20-13.1-10(e)(3) – Exide failed to comply with those limits on multiple occasions, including on occasions that were self-reported by Exide in Quarterly Deviation and Compliance Monitoring Reports submitted to IDEM under its Title V Permit.

64.     By failing to comply with its average furnace exhaust temperature limits, Exide violated the compliance demonstration and exhaust temperature maintenance requirements of 40 C.F.R. § 63.548(j) and (j)(4), 326 IAC 20-13.1-10(e), and its Title V Permit.

65.     Exide's violations of the Clean Air Act and Indiana law, as set forth in this Claim, make Exide subject to injunctive relief and civil penalties of up to:  (i) $37,500 per day per violation under the Clean Air Act and (ii) $25,000 per day per violation under Indiana law.

## FIFTH CLAIM FOR RELIEF

### (Failure to Maintain Records Demonstrating Compliance with the THC and D/F Limits Applicable to the Furnaces)

66.     Paragraphs 1-65 are realleged and incorporated by reference as if fully set forth

herein.

67. After the 2012 NESHAP Requirements took effect and applied to the Facility, Exide could not demonstrate continuous compliance with the THC and D/F emissions standards for the Facility's collocated blast and reverberatory furnaces, because Exide's recordkeeping systems did not always indicate when the reverberatory furnace was operating and when it was not operating.

68. By failing to maintain reliable records of periods of startup and shutdown of a furnace, and corresponding records regarding compliance with the THC and D/F emissions limits while one furnace or both furnaces were operating, Exide violated the compliance demonstration and recordkeeping requirements of 40 C.F.R. § § 63.550(a) and 63.550(c)(13), 40 C.F.R. § 63.10(b)(vii), 326 IAC 20-13.1-14, and its Title V Permit.

69. Exide's violations of the Clean Air Act and Indiana law, as set forth in this Claim, make Exide subject to injunctive relief and civil penalties of up to: (i) $37,500 per day per violation under the Clean Air Act and (ii) $25,000 per day per violation under Indiana law.

## SIXTH CLAIM FOR RELIEF

**(Failure to Develop and Follow Standard Operating Procedures for Startup and Shutdown Scenarios)**

70. Paragraphs 1-69 are realleged and incorporated by reference as if fully set forth herein.

71. After the 2012 NESHAP Requirements took effect and applied to the Facility, Exide could not demonstrate compliance with THC emission minimization requirements during furnace startups and shutdowns, because Exide had not developed and was not following standard operating procedures designed to minimize emission of THC during each startup and shutdown scenario anticipated.

15

72. By failing to develop and follow standard operating procedures designed to minimize emission of THC during each startup and shutdown scenario anticipated, Exide violated the requirements established by 40 C.F.R. § 63.543(l), 326 IAC 20-13.1-5(i), and its Title V Permit.

73. Exide's violations of the Clean Air Act and Indiana law, as set forth in this Claim, make Exide subject to injunctive relief and civil penalties of up to:  (i) $37,500 per day per violation under the Clean Air Act and (ii) $25,000 per day per violation under Indiana law.

## SEVENTH CLAIM FOR RELIEF

### (Failure to Include Rolled Lead Strip Line in Title V Permit)

74. Paragraphs 1-73 are realleged and incorporated by reference as if fully set forth herein.

75. Exide operates a Rolled Lead Strip Line ("RLS Line") in a building at the Facility that is located to the west of the Main Building.  The RLS Line is a source of air pollutant emissions, including lead and particulate matter emissions, and stack emissions from the RLS Line are currently controlled by the RLS Baghouse.

76. The Plaintiffs are informed and believe that Exide has not provided IDEM information and calculations regarding the RLS Line's potential to emit relevant air pollutants, such as lead and particulate matter, with and without air pollution control equipment.

77. The Plaintiff are informed and believe that Exide has failed to identify the RLS Line as a source of lead and particulate matter emissions in its Title V Permit applications, as required by the applicable Title V permit regulations.  As a result of that omission by Exide, the Title V Permit establishes no requirements for the RLS Line or the RLS Baghouse.

78. By failing to include the RLS Line and the RLS Baghouse as an emission unit and associated pollution control equipment in its Title V Permit applications, Exide violated the Title

V permitting requirements at 40 C.F.R. §§ 70.5(a), 70.5(c), and 70.5(d), and 326 IAC 2-7-4 and 2-7-5.

79. Exide's violations of the Clean Air Act and Indiana law, as set forth in this Claim, make Exide subject to injunctive relief and civil penalties of up to: (i) $37,500 per day per violation under the Clean Air Act and (ii) $25,000 per day per violation under Indiana law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States of America and the State of Indiana, respectfully request that this Court:

A. Order the Defendant to immediately comply with the statutory and regulatory requirements cited in this Complaint;

B. Order the Defendant to take appropriate measures to mitigate the effects of its violations;

C. Assess civil penalties against the Defendant for up to the amounts provided in the applicable statutes; and

D. Grant the United States and the State of Indiana such other relief as this Court deems just and proper.

*Signature Page for Complaint in*
*United States v. Exide Technologies (S.D. Ind.)*

FOR THE UNITED STATES OF AMERICA

Date: 03-11-2015

THOMAS A. MARIANI, JR.
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Date: 3/16/2015

RANDALL M. STONE
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-1308
randall.stone@usdoj.gov

JOSH J. MINKLER
United States Attorney
Southern District of Indiana

THOMAS E KIEPER
Assistant United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048

OF COUNSEL:

JOANNA S. GLOWACKI
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5

18

*Signature Page for Complaint in*
<u>*United States v. Exide Technologies*</u> *(S.D. Ind.)*

FOR THE STATE OF INDIANA ON BEHALF OF
THE INDIANA DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT

Respectfully submitted

GREGORY F. ZOELLER
Indiana Attorney General
Attorney No. 1958-98

Date: 3/11/2015

By: _____
Timothy J. Junk
Deputy Attorney General
Attorney No. 5587-02

Indiana Office of the Attorney General
IGCS, 5th Floor
302 West Washington Street
Indianapolis, IN 46204
Telephone: (317) 232-6247

**CERTIFICATE OF SERVICE**

      Pursuant to Paragraphs 87 and 99 of the Consent Decree that has been lodged with this Complaint, I hereby certify that copies of the foregoing Complaint were served on this date by first-class mail, postage prepaid, upon the following individuals:

    Michael Henry
    Facility Manager – Environment Health & Safety
    Exide Technologies
    2601 West Mount Pleasant Blvd.
    P.O. Box 2098
    Muncie, IN 47302

    Fred Ganster
    Manager, Corporate Environment Health & Safety
    3000 Montrose Avenue
    Reading, PA 19605

    Legal Department
    Exide Technologies
    13000 Deerfield Parkway, Building 200
    Milton, GA 30004

    Robert L. Collings, Esquire
    Schnader Harrison Segal & Lewis LLP
    1600 Market Street, Suite
    Philadelphia, PA 19103

Dated:      March 16, 2015                                        *s/ Randall M. Stone*